## UNITED STATES DISTRICT COURT
## DISTRICT OF MARYLAND

NATALIE THOMAS,

    Plaintiff,

    v.

EOTECH, LLC,

    Defendant.

Civil Action No. TDC-23-3313

### MEMORANDUM OPINION

Plaintiff Natalie Thomas has filed a civil action against Defendant EOTECH, LLC in which she alleges employment discrimination on the basis of race, sex, and age in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. §§ 2000e–2000e-17; the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. §§ 621–634; the Civil Rights Act of 1866, 42 U.S.C. § 1981 ("§ 1981"); and the Maryland Fair Employment Practices Act ("MFEPA"), Md. Code Ann., State Gov't §§ 20–601 to 20–611 (LexisNexis 2021).  EOTECH has filed a Motion to Dismiss or Transfer Venue, which is fully briefed.  The Court held a hearing on the Motion on November 1, 2024.  For the reasons set forth below, the Motion will be GRANTED IN PART and DENIED IN PART.

### BACKGROUND

### I.  Alleged Discrimination

In the Amended Complaint, Plaintiff Natalie Thomas alleges the following facts which the Court accepts as true for purposes of the resolution of the Motion.

On or about April 18, 2022, EOTECH, LLC ("EOTECH") hired Thomas, an African American woman who was approximately 57 years old at that time, to be a Project Controller. Thomas came to EOTECH with over 25 years of experience in government contracting and finance. EOTECH, a company that designs and manufactures night vision products, has its corporate headquarters in Plymouth, Michigan, but Thomas performed her job remotely from her home in Mitchellville, Maryland. Thomas alleges that during her approximately seven-month tenure at EOTECH, she was subjected to various instances of discrimination based on race, sex, and age that culminated in EOTECH "abruptly terminat[ing] [her] employment without any explanation" on November 9, 2022. Am. Compl. ¶¶ 41, 46, ECF No. 10.

Thomas asserts that when applying for the position, she was initially interviewed remotely through an audio connection only by EOTECH Chief Executive Officer Matt Van Haaren and Chief Financial Officer Ian Burns. Although Van Haaren hired Thomas, when she went to visit EOTECH's headquarters and met Van Haaren in-person for the first time, Van Haaren "suddenly became standoffish to" Thomas and "ignored or avoided [her] when she attempted to speak with him in-person." *Id*. ¶¶ 28, 29. According to Thomas, EOTECH's management team failed to onboard her properly by refusing to give her a "walk-through" of the business or "any financial calendars," and by providing only a few, non-substantive overview meetings and introductions. *Id*. ¶¶ 30-31. Thomas further alleges that throughout the remainder of her employment, EOTECH did not give her "appropriate resources and materials" which she believes were provided to "younger, Caucasian employees." *Id*. ¶ 36.

Thomas also alleges that other EOTECH employees made discriminatory remarks about her or to her. For example, soon after she began working for EOTECH, Thomas learned that Burns "had been misinforming other employees" that she was from Baltimore, Maryland, "a city with a

large African American population," even though she is not from Baltimore. *Id.* ¶ 32-33. In another instance during her first week of employment, Jim Ramsey, EOTECH's Head Project Manager, told the only African American woman working at an EOTECH location in California that EOTECH "had hired a 'sister,'" apparently in reference to Thomas and her race. *Id.* ¶ 34. Thomas later discovered that she was one of only two African American employees at EOTECH, one of only a few female employees, and the oldest EOTECH employee. A few months later, around September 2022, three EOTECH employees, including Burns, accused Thomas "of being 'angry' without justification," and Burns then attributed Thomas's anger to her personality. *Id.* ¶¶ 38-39. According to Thomas, by associating her anger with her personality, Burns was "displaying his belief in the pervasive 'angry Black woman' stereotype which characterizes African American women as hostile, aggressive, illogical, ill-tempered and bitter." *Id.* ¶ 39.

On November 9, 2022, EOTECH terminated her employment "abruptly" and "without any explanation." *Id.* ¶ 41. Thomas alleges that EOTECH replaced her with "a less qualified, substantially younger (age 30s-40s) Caucasian male." *Id.* ¶ 43. She also asserts that although EOTECH initially encouraged her to apply for unemployment compensation benefits, in February 2023 it contested her unemployment compensation claim by taking the position "that she had unsatisfactory work performance." *Id.* ¶ 45.

## II.    The Limitations Agreement

On April 11, 2022, Thomas electronically signed an "Employee Handbook Acknowledgement of Receipt," through which she confirmed that she had received a copy of the EOTECH Employee Handbook. The end of that form included an "Agreement to Shorten Limitations Period" ("the Limitations Agreement"), which Thomas separately signed on the same date. The Limitations Agreement states that:

3

As a condition of employment or continued employment, unless otherwise provided for by law, I agree not to file any action or suit relating to my employment more than 180 calendar days after the event and/or employment practice or action complained of including, but not limited to, employment termination and discrimination claims . . . and to waive any state or federal statutes of limitation to the contrary. I understand that the statute of limitations for claims arising out of an employment action may be longer than 180 calendar days, and agree that any employer action that is the subject of a lawsuit or action is barred if it is not filed within the 180 day period unless otherwise provided for by law. This provision does not prohibit the timely filing of a charge with a federal administrative agency under federal law, but unless filed within 180 days (or in less time if any applicable law requires), I waive the right to recover money damages or other relief. I further agree that if I am required to file a charge or claim with an administrative [agency] before I can file any action or suit and/or if I need authorization from an administrative agency such as a right to sue letter, unless otherwise provided for by applicable law, the 180 day period is tolled during the time the charge or claim is pending before that administrative agency. The period before and after the filing of a charge or claim will count toward the 180-day period.

Limitations Agreement at 45-46, Mot. Ex. 2, ECF No. 24-3.

## III.   Procedural History

On February 23, 2023, 106 days after her termination by EOTECH, Thomas filed a charge of discrimination with the United State Equal Employment Opportunity Commission ("EEOC") in which she alleged race, sex, and age discrimination. The charge was dually filed with the Maryland Commission on Civil Rights ("MCCR"). On September 7, 2023, Thomas received a Dismissal and Notice of Rights ("Right-to-Sue Letter") from the EEOC. On December 6, 2023, 90 days after she received the Right-to-Sue Letter, Thomas filed the original Complaint in this case. In the presently operative Amended Complaint, Thomas alleges that based on the events described above, EOTECH engaged in race, sex, and age discrimination in violation of Title VII, the ADEA, § 1981, and the MFEPA.

## DISCUSSION

In the Motion to Dismiss or Transfer Venue, EOTECH asserts two arguments. First, EOTECH asserts that the Amended Complaint must be dismissed for failure to state a claim under

4

Federal Rule of Civil Procedure 12(b)(6) because all of Thomas's claims are time-barred by the shortened limitations period to which Thomas agreed by signing the Limitations Agreement. Second, it argues that, pursuant to Rule 12(b)(3) and 28 U.SC. § 1406, the United States District Court for the District of Maryland is an improper venue for Thomas's Title VII claims under 42 U.S.C. § 2000e-5(f)(3), and all of Thomas's claims should therefore be transferred to the United States District Court for the Eastern District of Michigan, which is a proper venue for the Title VII claims. For the first time in its reply brief, EOTECH asserts that Thomas's claims should be transferred to the Eastern District of Michigan based on a lack of personal jurisdiction in this Court. The Court will consider EOTECH's venue and personal jurisdiction arguments before addressing its argument for dismissal under Rule 12(b)(6). *See Benton v. England*, 222 F. Supp. 2d 728, 730 (D. Md. 2002) (stating that the court would first consider whether a case "is even properly before" it before "delving into the more substantive examinations regarding the success of [a plaintiff's] attempt to state a claim").

## I.    Venue

EOTECH argues that this case should be transferred to the Eastern District of Michigan because under the venue provision of Title VII, the District of Maryland is not a proper venue for Thomas's Title VII claims.

### A.    Legal Standards

On a motion to dismiss or transfer for improper venue pursuant to Rule 12(b)(3), the plaintiff has the burden to put forth a *prima facie* showing that venue is proper in the district in which the case was filed. See *Mitrano v. Hawes*, 377 F.3d 402, 405 (4th Cir. 2004); *Jones v. Koons Auto., Inc.*, 752 F. Supp. 2d 670, 679–80 (D. Md. 2010). The court may consider evidence outside the pleadings and is to view the facts in the light most favorable to the plaintiff. *Aggarao*

5

*v. MOL Ship Mgmt. Co., Ltd.*, 675 F.3d 355, 365–66 (4th Cir. 2012); *Sucampo Pharms., Inc. v. Astellas Pharma*, 471 F.3d 544, 549–50 (4th Cir. 2006) (treating a motion to dismiss based on a forum-selection clause as a Rule 12(b)(3) motion so as to allow "the court to freely consider evidence outside the pleadings").

If a case is deemed to have been filed in the wrong venue, a district court may dismiss the case "or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought." 28 U.S.C. § 1406(a); *see Nichols v. G.D. Searle & Co.*, 991 F.2d 1195, 1200-01 (4th Cir. 1993). Section 1406(a) authorizes "broad remedial relief where there are impediments to an adjudication on the merits, and has not been limited to instances where the only impediment is lack of venue." *Porter v. Groat*, 840 F.2d 255, 257 (4th Cir. 1988).

By statute, venue in a Title VII case is proper in: (1) "any judicial district in the State in which the unlawful employment practice is alleged to have been committed"; (2) "the judicial district in which the employment records relevant to such practice are maintained and administered"; or (3) "the judicial district in which the aggrieved person would have worked but for the alleged unlawful employment practice." 42 U.S.C. § 2000e-5(f)(3). "[I]f the respondent is not found within any such district, such an action may be brought within the judicial district in which the respondent has [its] principal office." *Id.*

## B.    Title VII Venue

EOTECH argues, and Thomas does not dispute for purposes of the Motion, that venue is proper in the Eastern District of Michigan pursuant to the first two prongs of the Title VII venue statute. As to the first prong, EOTECH asserts that the alleged unlawful employment practice, Thomas's termination, occurred in the Eastern District of Michigan because the decision to terminate was made at, and communicated from, its corporate headquarters in Plymouth,

6

Michigan. As for the second prong, EOTECH asserts that the relevant employment records are located in the Eastern District of Michigan because EOTECH maintains and administers all of its employment records at its headquarters. The issue in dispute is whether, as asserted by Thomas, venue in the District of Maryland is proper based on the third prong of the Title VII venue statute, which provides that venue for a Title VII action may lie "in the judicial district in which the aggrieved person would have worked but for the alleged unlawful employment practice." 42 U.S.C. § 2000e-5(f)(3).

Based on the plain language of this provision, the Court finds that Thomas has alleged sufficient facts to demonstrate that the third prong provides a basis for venue in this District. The Amended Complaint states that Thomas "performed her job remotely from her home in Maryland" and that she currently resides in Maryland. Am. Compl. ¶¶ 2, 4. EOTECH does not claim that Thomas's work location was at EOTECH's office in Michigan. In light of Thomas's work arrangement, it is reasonable to infer that Thomas "would have worked" in Maryland "but for" her termination. 42 U.S.C. § 2000e-5(f)(3).

Multiple federal courts have held that, based on this third prong, Title VII plaintiffs who worked remotely for an out-of-district company prior to an alleged unlawful employment practice by that company can establish venue in the judicial district where they worked remotely, because that is presumably where they would have continued to work absent the unlawful employment practice. For example, in *Passantino v. Johnson & Johnson Consumer Products, Inc.*, 212 F.3d 493 (9th Cir. 2000), the United States Court of Appeals for the Ninth Circuit held that, under the third prong, venue was proper in the Western District of Washington for a Title VII failure-to-promote claim where the plaintiff worked remotely out of her home office in Washington, but her employer made the allegedly unlawful decisions not to promote her in New Jersey. *Id.* at 499-501,

7

504-06. The court further stated that had the plaintiff "been wrongfully discharged . . . she could have sued in the district in which she worked." *Id.* at 505. Other federal courts considering Title VII discriminatory termination claims by plaintiffs who worked remotely in a judicial district away from their employer have reached the same conclusion. *See, e.g.*, *Hale v. Iancu*, No. 19-cv-1963, 2021 WL 9405460, at *1, *3 (D. Conn. Feb. 23, 2021); *Borchik v. CoreLogic*, No. 16-cv-00708-RM-MJW, 2017 WL 4407926, at *4 (D. Colo. Apr. 24, 2017), *report and recommendation adopted*, No. 16-cv-00708-RM-MJW, 2017 WL 4407927 (D. Colo. Aug. 3, 2017).

None of EOTECH's counterarguments alter this conclusion. First, EOTECH argues that the third prong of Title VII's venue statute "is triggered only if the defendant cannot be found in a proper district under the first two provisions." Mot. at 7, ECF No. 24-1 (quoting *Ellis v. Spellings*, No. 07-cv-257, 2008 WL 3925263, at *5 (W.D.N.C. Aug. 21, 2008)). The only authority EOTECH provides to support this proposition is an unpublished, non-binding district court opinion. *See Ellis v. Spellings*, No. 07-cv-257, 2008 WL 3925263, at *15 (W.D.N.C. Aug. 21, 2008). This interpretation of the Title VII venue statute, however, runs contrary to the provision's plain text, which states that a Title VII action:

> [M]ay be brought in any judicial district in the State in which the unlawful employment practice is alleged to have been committed, in the judicial district in which the employment records relevant to such practice are maintained and administered, *or* in the judicial district in which the aggrieved person would have worked but for the alleged unlawful employment practice, but if the respondent is not found within any such district, such an action may be brought within the judicial district in which the respondent has his principal office.

42 U.S.C. § 2000e-5(f)(3) (emphasis added). The use of "or" to separate the second and third prongs of the provision clearly establishes that satisfying any of the three prongs is sufficient alone to establish venue. Had Congress intended to limit the availability of the third prong to situations in which venue cannot be established based on the first two prongs, it could have and would have

8

included language establishing that pre-condition. Indeed, Congress was aware of how to impose such a limitation because within the Title VII venue statute, Congress established a pre-condition, through the language "but if the respondent is not found within any such district," which precedes "such an action may be brought within the judicial district in which the respondent has his principal office." *Id.* Where the only language signaling any pre-condition on the establishment of venue applies not to the third prong, but to a fourth means of establishing venue, the Court finds that the plain language of the statute establishes that there is no requirement that the first two prongs be unavailable before a plaintiff may establish venue based on the third prong.

This conclusion is consistent with relevant case law. Although it has not squarely addressed this issue, the United States Court of Appeals for the Fourth Circuit has described the relevant portion of the Title VII venue statute as providing "four alternatives as the proper venue for 'such an action.'" *Chris v. Tenet*, 221 F.3d 648, 652 (4th Cir. 2000) (quoting 42 U.S.C. § 2000e-5(f)(3)). In *Passantino*, the Ninth Circuit similarly stated that "Title VII's venue provision obviously contemplates the possibility that several districts could provide an appropriate venue for the same action." *Passantino*, 212 F.3d at 506. Notably, the court found that venue was proper pursuant to the third prong in the Western District of Washington, where the plaintiff worked from her home office, even though venue was also plainly proper in the District of New Jersey, the location of the company's headquarters where the allegedly unlawful decision was made. *Id.* at 499-501, 504-06. In contrast, *Ellis*, the case relied upon by EOTECH, provides no explanation for its interpretation and instead cites to *Ifill v. Potter*, No. 05-2320 (RWR), 2006 WL 3349549 (D.D.C. Nov. 17, 2006), a case in which the court found that venue was proper under all three prongs of the Title VII statute without asserting the rule advanced by EOTECH here; indeed, the *Ifill* court instead stated that "[a]ccording to the [Title VII venue] statute, venue is proper in any of

9

three judicial districts" including "where the aggrieved person would have worked but for the alleged unlawful employment practice." *Id.* at \*1-2. Accordingly, where the plain language of the Title VII venue statute is inconsistent with EOTECH's interpretation, and where EOTECH has not identified any binding or persuasive authority to support its interpretation of the statute, the Court rejects the proposition that the third prong of Title VII's venue provision is available only when venue cannot be established pursuant to one of the first two prongs.

Second, EOTECH argues that the third prong is inapplicable here because it primarily applies to failure-to-hire cases, while Thomas has alleged a discriminatory termination. As authority for this point, EOTECH cites only to this Court's decision in *Jackson v. Mayorkas*, No. TDC-22-2193, 2023 WL 5278819 (D. Md. Aug. 16, 2023), which includes the statement that the third prong "is most relevant in cases in which a person was not hired for a position." *Id.* at \*4. That statement, however, in no way precludes application of the third prong to a discriminatory termination. Moreover, in *Jackson* the court noted that the third prong was not at issue because the plaintiff had not invoked it, and it found in any event that the third prong was inapplicable because the facts did not demonstrate that the plaintiff would have worked in Maryland absent the unlawful action, not that the third prong was unavailable based on the type of discrimination claim asserted. *Id.* at \*4.

Notably, in *Passantino*, the court rejected an argument similar to the one EOTECH asserts here, that although the third prong may apply to discriminatory termination or hostile work environment claims, it may not be applied to a failure-to-promote claim. *See Passantino*, 212 F.3d at 505 ("Nothing in the text or history of the statute's venue provision suggests that a different rule should apply in failure-to-promote cases"). Indeed, multiple other federal courts have found the third prong of Title VII's statute applicable to termination cases. *See Campbell v. U.S. Navy*, 567

10

F. Supp. 356, 356-57, 358 n.3 (D. Md. 1983); *Hale*, 2021 WL 9405460, at \*1, \*3; *Borchik*, 2017 WL 4407926, at \*4.

Third and finally, EOTECH asserts that even if the third prong does apply to this case, Thomas has not alleged sufficient facts to demonstrate that she would have continued to work in Maryland absent her termination.     Specifically, EOTECH attached to its reply brief an Unemployment Benefits Claim that Thomas filed with the Virginia Employment Commission, which EOTECH argues makes it "unclear whether [Thomas] was even working in Maryland at the time of her separation because she filed her claim for unemployment with the Virginia Employment Commission." Reply at 3, ECF No. 35. Though the Court may consider evidence outside the pleadings for the purposes of assessing a Rule 12(b)(3) Motion to Transfer Venue, *Aggarao*, 675 F.3d at 365–66, this exhibit does not alter the Court's conclusion relating to the third prong. The form listed two employers, EOTECH and a Virginia company for which Thomas also worked. Significantly, in that form dated less than two months after her termination by EOTECH, Thomas listed a Bowie, Maryland address as both her physical and mailing addresses. That assertion is entirely consistent with her statement in the Amended Complaint that when employed by EOTECH, she worked remotely from her home in Maryland, and with the inference that she would have continued to work in Maryland had she not been terminated.

For all of these reasons, the Court finds that venue for Thomas's Title VII claims is proper in the District of Maryland because it is the District "in which the aggrieved person would have worked but for the alleged unlawful employment practice." 42 U.S.C. 2000e-5(f)(3). The Court therefore need not address Thomas's alternative arguments on venue. Because EOTECH does not claim that venue in the District of Maryland is not proper for Thomas's other claims under the ADEA, § 1981, and the MFEPA, and where its argument for transferring those claims is predicated

11

on its claim that the Title VII claims must be transferred based on improper venue, the Court will deny the Motion to Transfer Venue as to all claims.

## II.    Personal Jurisdiction

In its Motion, EOTECH made no reference to any claim that this Court lacks personal jurisdiction over it.  In its reply brief, EOTECH for the first time asserted, in response to an argument by Thomas that venue is proper in the District of Maryland pursuant to 28 U.S.C. § 1391(b)(3) because it is a "judicial district in which any defendant is subject to the court's personal jurisdiction with respect to such action," that this Court does not have personal jurisdiction over EOTECH and that Thomas's "claims should be dismissed or transferred on this basis as well." Reply at 3, 6.  At the hearing on the Motion, counsel for EOTECH clarified that this assertion in the reply brief was offered not only as an argument that venue was improper, but also as an argument for dismissal or transfer based on a lack of personal jurisdiction.

"Generally, 'new arguments cannot be raised in a reply brief' before the district court." *De Simone v. VSL Pharms., Inc.*, 36 F.4th 518, 531 (4th Cir. 2022) (quoting *United States v. Smalls*, 720 F.3d 193, 197 (4th Cir. 2013)).  Furthermore, the defense of lack of personal jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(2) is one of the defenses that is waived if not asserted in a defendant's first motion filed pursuant to Rule 12. *See* Fed. R. Civ. P. 12(b)(2), (g)(2), (h)(1).  Multiple federal courts, including within the Fourth Circuit, have held that when a defendant files a Rule 12(b) motion but seeks dismissal based on a lack of personal jurisdiction for the first time in the reply brief to that motion, the defendant has waived its defense of lack of personal jurisdiction. *See Safety Equip. Inst. v. Signature Lacrosse, LLC*, 438 F. Supp. 3d 685, 686-87 (E.D. Va. 2020); *Ramer v. United States*, 620 F. Supp. 2d 90, 101-02 (D.D.C. 2009).  Here,

12

where EOTECH in no way asserted a defense of lack of personal jurisdiction when it filed the
pending Motion, the Court finds that it has waived that defense pursuant to Rule 12(h)(1).

### III.     Limitations Agreement

In the Motion, EOTECH requests dismissal of all claims pursuant to Federal Rule of Civil
Procedure 12(b)(6) based on the argument that Thomas's claims are time-barred under the
Limitations Agreement signed by Thomas, which requires that any such claims must be filed
within 180 days.  EOTECH's argument, however, requires the Court to consider the Limitations
Agreement, which was an exhibit to the Motion. When adjudicating a motion to dismiss under
Rule 12(b)(6), courts generally may consider only the complaint and its attachments, and they are
permitted to consider documents attached to the motion only "when the document is integral to
and explicitly relied on in the complaint, and when the plaintiffs do not challenge the document's
authenticity." *Zak v. Chelsea Therapeutics Int'l, Ltd.*, 780 F.3d 597, 606–07 (4th Cir. 2015)
(quoting *Am. Chiropractic Ass'n v. Trigon Healthcare, Inc.*, 367 F.3d 212, 234 (4th Cir. 2004)).
The Court has concluded that the Limitations Agreement is not fairly construed to be integral to
the complaint and thus may not be considered on a motion to dismiss. *See, e.g.*, *Roberts v. Carnival
Corp.*, 824 F. App'x 825, 826-27 (11th Cir. 2020) (in a negligence case, declining to consider a
contractual limitations period included in the plaintiff's cruise ticket contract at the motion-to-
dismiss stage); *Davis v. CMH Mfg., Inc.*, No. 14-CV-1404, 2014 WL 5020917, at *3-4 (M.D. Pa.
Oct. 8, 2014) (declining to consider a contractual limitations period in a Title VII case at the
motion-to-dismiss stage); *Kiraly v. Cornell Coop. Extension of Delaware Cnty.*, No. 23-CV-0446
(GTS/ML), 2024 WL 1242320, at *11 (N.D.N.Y. Mar. 22, 2024) (on a motion to dismiss in a Title
VII case, declining to consider a claim release agreement because it was not integral to the
complaint).

13

The Court, however, may consider the Limitations Agreement if the Motion is converted into a Motion for Summary Judgment, which requires notice of the conversion and a reasonable opportunity to obtain any necessary discovery. Fed. R. Civ. P. 12(d); *Greater Balt. Ctr. for Pregnancy Concerns, Inc. v. Mayor & City Council of Baltimore*, 721 F.3d 264, 281 (4th Cir. 2013). On November 27, 2024, after the Court notified the parties that it was considering converting the Motion to a Motion for Summary Judgment, the parties agreed that the Motion could be so converted without discovery, and that the Court could rule on the Motion for Summary Judgment based on the present record. Accordingly, the Court will treat the Motion as a Motion for Summary Judgment on the issue of whether the contractual limitations period renders the claims time-barred.

### A.   Legal Standard

Under Federal Rule of Civil Procedure 56(a), the Court grants summary judgment if the moving party demonstrates that there is no genuine issue as to any material fact, and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). In assessing the Motion, the Court views the facts in the light most favorable to the nonmoving party, with all justifiable inferences drawn in its favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). The Court may rely only on facts supported in the record, not simply assertions in the pleadings. *Bouchat v. Balt. Ravens Football Club, Inc.*, 346 F.3d 514, 522 (4th Cir. 2003). A fact is "material" if it "might affect the outcome of the suit under the governing law." *Anderson*, 477 U.S. at 248. A dispute of material fact is "genuine" only if sufficient evidence favoring the nonmoving party exists for the trier of fact to return a verdict for that party. *Id.* at 248–49.

14

**B.      Application of the Limitations Agreement**

EOTECH argues that all of Thomas's claims against it are time-barred by the 180-day limitations period set forth in the Limitations Agreement.  Under the Limitations Agreement, which Thomas undisputedly signed, she "agree[d] not to file any action or suit relating to [her] employment more than 180 days after the event and/or employment practice or action complained of including, but not limited to, employment termination and discrimination claims."  Limitations Agreement at 45.  It also states that if Thomas is required to file a charge or claim with an administrative agency before she can bring a civil action against EOTECH, "the 180 day period is tolled during the time the charge or claim is pending before the administrative agency."  *Id.* at 46.

Thomas does not dispute that if this 180-day contractual limitations period applies to her claims, they are time-barred.  Indeed, as discussed above, Thomas filed her EEOC charge of discrimination ("the EEOC Charge") on February 23, 2023, 106 days after her November 9, 2023 termination by EOTECH, which is the "event . . . or action" of which she complains in this case. *Id.* at 45.  Under the terms of the Limitations Agreement, that filing tolled the 180-day period while the charge was pending with the EEOC.  The limitations period began to run again when Thomas subsequently received her EEOC Right-to-Sue Letter on September 7, 2023, but she did not file the original Complaint in this case until December 6, 2023, 90 days after receiving that letter.  Accordingly, excluding the time period during which her charge was pending before the EEOC, 196 days elapsed from the date of Thomas's termination until she filed the original Complaint, such that her claims would be barred by the 180-day limitations period.

Thomas therefore argues that the 180-day contractual limitations period is not enforceable as a matter of law as to both her federal and state claims.  In addressing this argument, the Court discusses the federal and state claims separately.

### C.    Federal Claims

Thomas's argument on the unenforceability of the Limitations Agreement as to the federal claims relies entirely on *Logan v. MGM Grand Detroit Casino*, 939 F.3d 824 (6th Cir. 2019), in which the United States Court of Appeals for the Sixth Circuit held that parties may not contractually alter Title VII's statutory limitations period based primarily on the principle that "where statutes that create rights and remedies contain their own limitation periods, the limitation period should be treated as a substantive right" that "generally is not waivable in advance by employees." *Id.* at 826-27, 829 (finding that a contractual reduction of the Title VII limitations period to six months was not enforceable). The court also considered the fact that Title VII requires a plaintiff to complete an extensive "pre-suit process" that begins with the filing of a charge of discrimination with the EEOC designed in part to foster conciliation and cooperation in resolving the matter that would be undermined if alterations to the statutory limitations period are permitted. *Id.* at 828-29. The court further noted that Title VII "creates a uniform, nationwide system using 'an integrated, multistep enforcement procedure' to resolve claims of employment discrimination" that would be frustrated if different states took different approaches to whether parties could alter the limitations period. *Id.* at 832-33 (quoting *Occidental Life Ins. Co. of California v. EEOC*, 432 U.S. 355, 359 (1977)).  Relying on its own precedent that parties cannot contractually alter the statutory limitations period applicable to claims under the Fair Labor Standards Act and the Equal Pay Act, *see Boaz v. FedEx Customer Info. Servs., Inc.*, 725 F.3d 603, 605-06 (6th Cir. 2013), each of which is a "federal law that extends rights to private individuals" and "contains its own limitations period," the court held that "a contractual provision that purports to shorten the limitation period for bringing suit under Title VII is unenforceable." *Logan*, 939 F.3d at 831.  In *Thompson v. Fresh Products, LLC*, 985 F.3d 509 (6th Cir. 2021), the Sixth Circuit extended

*Logan*'s reasoning to the ADEA and held that parties cannot contractually shorten the ADEA's statutory limitations period. *Id.* at 521.

### 1.    Section 1981

Significantly, *Logan* specifically stated that its holding did not preclude parties from agreeing by contract to shorten the limitations period for a § 1981 claim, primarily because § 1981 does not contain its own statutory limitations period or require that an "extensive procedure" be completed before filing suit. *See Logan*, 939 F.3d at 829-30; *Thurman v. DaimlerChrysler, Inc.* 397 F.3d 352, 358-59 (6th Cir. 2004) (upholding a contractual shortening of the limitations period on a § 1981 claim to six months). Section 1981, in fact, differs from Title VII in that it does not have its own limitations provision within the statute; rather, for § 1981 employment discrimination claims, the general federal four-year limitations period provided for in 28 U.S.C. § 1658 applies. *See Jones v. Circuit City Stores, Inc.*, 370 F.3d 417, 420-21 (4th Cir. 2004). There is also no requirement that a § 1981 plaintiff exhaust EEOC administrative remedies before filing an employment discrimination suit. *See Johnson v. Ry. Express Agency, Inc.*, 421 U.S. 454, 460-61 (1975). In light of these distinctions, the reasoning of *Logan* does not apply to § 1981. Where Thomas has offered no other argument on why the Limitations Agreement cannot be enforced as to the § 1981 claim, the Motion will be granted as to that claim. *See Thurman*, 396 F.3d at 358-59; *Wilkerson v. Fed. Express*, No. 10-CV-01855-AW, 2011 WL 2176823, at *4 (D. Md. June 2, 2011) (enforcing a contractual provision shortening the limitations period for a § 1981 claim to six months); *Njang v. Whitestone Group, Inc.*, 187 F. Supp. 3d 172, 178-79 (D.D.C. 2016) (finding that the shortening of the limitations period for a § 1981 claim to six months was not unreasonable and was enforceable).

17

### 2.     Title VII and ADEA

As for the Title VII and ADEA claims, even if this Court were to find *Logan*'s reasoning in relation to such claims to be persuasive, it finds that it cannot directly apply *Logan* to the present case because its reasoning is inconsistent with relevant precedent of the Fourth Circuit. Although the Fourth Circuit has not specifically addressed the issue of whether the Title VII or ADEA statutory limitations periods may be altered by contract, it has held that "[a]s a general rule, statutory limitations periods may be shortened by agreement, so long as the limitations period is not unreasonably short." *In re Cotton Yarn Antitrust Litig.* ("*In re Cotton Yarn*"), 505 F.3d 274, 287 (4th Cir. 2007); *see also Atl. Coast Line R.R. Co. v. Pope*, 119 F.2d 39, 44 (4th Cir. 1941). In *In re Cotton Yarn*, the Fourth Circuit applied this general rule to a contractual modification of the four-year statutory limitations period applicable to private antitrust claims for violations of the Sherman Act, 15 U.S.C. § 1, and found that a reduction of the limitations period to only one year was not unreasonably short. *In re Cotton Yarn*, 505 F.3d at 288. It also considered the question of whether the statutory limitations period, 15 U.S.C. § 15b, conferred a substantive right, rather than a procedural right, that cannot be waived or modified by contract and concluded that it did not. *In re Cotton Yarn*, 505 F.3d at 289. Although the court relied in part on the fact that the Sherman Act statutory limitations period was not a part of the original statute and was added later by amendment, where the Sherman Act, like Title VII and the ADEA, created private enforcement rights, and its limitations period is likewise a specific statutory provision directly applicable to that federal law, this conclusion reflects that the Fourth Circuit does not subscribe to the Sixth Circuit's rule as stated in *Logan* that "where statutes that create rights and remedies contain their own limitation periods, the limitation period should be treated as a substantive right" that "generally is not waivable in advance by employees." *Logan*, 939 F.3d at 829.

18

The other primary basis underlying the holding in *Logan*, the unique aspects of Title VII such as its extensive "pre-suit process," also appears to be misaligned with the Fourth Circuit's approach to contractually altered statutory limitations periods.  *Id.* at 828-29.  In *Bracey v. Lancaster Foods LLC*, 838 F. App'x 745 (4th Cir. 2020), the Fourth Circuit rejected a related argument that an arbitration agreement that shortened to one year all applicable statutes of limitations for employment-related claims, including in that case an Americans with Disabilities Act ("ADA") claim, was unenforceable as substantively unconscionable because the shortened period would make it difficult for a plaintiff to "exhaust his claims before the EEOC prior to making a demand for arbitration."  *Id.* at 746, 749; *see Bracey v. Lancaster Foods LLC*, No. RDB-17-1826, 2018 WL 1570239, at *1, *5-6 (D. Md. Mar. 30, 2018).  Although the ADA has the same statutory limitations period and the same required pre-suit process before the EEOC that apply to Title VII claims, *see* 42 U.S.C. § 12117(a); *Thompson*, 985 F.3d at 520-21, the court found no basis to deviate from the general rule of *In re Cotton Yarn* that such a shortened limitations period is enforceable unless "unreasonably short" and upheld the one-year limitations period.  *See Bracey*, 838 F. App'x at 749 (finding "nothing in this record that would lead us to a different conclusion" than in *In re Cotton Yarn*); *see also In re Cotton Yarn*, 505 F.3d at 288.  Thus, although in an unpublished decision arising in the arbitration context, the Fourth Circuit has declined to treat a statutory limitations period for employment discrimination claims subject to the pre-suit process as unwaivable and find a contractual shortening of it unenforceable.

Notably, *Logan*'s reasoning based on Title VII's required pre-suit process is largely inapplicable to the present case.  In *Logan*, the Sixth Circuit reasoned that the EEOC administrative process required under Title VII supported its holding that parties cannot contract to shorten the relevant limitations periods because doing so would upset the "delicate balance" established by

this process and "remov[e] the incentive of employers to cooperate with the EEOC, and encourag[e] litigation that gives short shrift to pre-suit investigation and potential resolution of disputes through the EEOC and analog state and local agencies." *Logan*, 939 F.3d at 829; *see also Thompson*, 985 F.3d at 521 ("[L]ike Title VII, the ADEA emphasizes the importance of the pre-suit cooperative process . . . ."). Here, however, the Limitations Agreement, by tolling the 180-day limitations period while an administrative charge is pending, does not prevent or hinder a plaintiff's ability to pursue and complete the EEOC administrative process. Thus, while the reasoning of *Logan* on this issue is sound, it carries little weight as applied to the present Limitations Agreement. As a result, and where the Court finds that the reasoning of *Logan* conflicts with the Fourth Circuit's approach to similar questions, it declines to apply *Logan* to find the present Limitations Agreement categorically unenforceable because it relates to Title VII claims and instead must apply the principles set forth in *In re Cotton Yarn* to the question of whether the Title VII and ADEA statutory limitations periods may be altered by the present Limitations Agreement.

Under *In re Cotton Yarn*, courts enforce a contractually shortened limitations period unless it is "unreasonably short." *In re Cotton Yarn*, 505 F.3d at 287. In applying this standard, the Fourth Circuit has generally stated that the mere fact that a contractual limitations period "is shorter than that provided by federal law" does not alone make it unreasonable, and that "[c]ourts have frequently found contractual limitations periods of one year (or less) to be reasonable." *Id.* at 287–88 (citing cases). In *In re Cotton Yarn*, for example, the court upheld as reasonable a reduction by contract of the statutory limitations period for a Sherman Act claim from four years to one year. *Id.* Beyond those broad principles, the court evaluated, without considering the issue to be dispositive, whether the contractually shortened limitations period would be deemed reasonable

20

"under the state law that governs the contract formation" and thus relied in part on the fact that under North Carolina law, one-year limitations periods in contracts subject to the Uniform Commercial Code are considered to be reasonable. *Id.* Here, where Thomas has alleged that she was interviewed remotely, was hired on April 18, 2022, and worked from Maryland, and where she electronically signed the Limitations Agreement on April 11, 2022, the Court infers that Thomas entered into that agreement in Maryland and will consider Maryland law in assessing the reasonableness of the 180-day limitations period as to Thomas's federal claims. *See Kramer v. Bally's Park Place, Inc.*, 535 A.2d 466, 467 (Md. 1988) ("[T]he law of the jurisdiction where the contract was made controls its validity and construction."); *see also* Mot. Dismiss at 4-5, ECF No. 24-1 (analyzing the contractual limitations periods issue under Maryland law). On the issue of whether a contractual reduction in a limitations period should be deemed unreasonably short, Maryland law considers "the duration of the shortened limitations period compared to the period that would otherwise govern." *Ceccone v. Carroll Home Servs., LLC*, 165 A.3d 475, 483 (Md. 2017).

Here, the Limitations Agreement shortened the Title VII limitations period to 180 days, or approximately six months. As for what limitations period "would otherwise govern," *id.*, before filing suit under Title VII, a plaintiff must first file a charge of discrimination with the EEOC or a "State or local agency with authority to grant or seek relief" from the discriminatory practice. 42 U.S.C. § 2000e–5(e)(1). In a state such as Maryland, which has a state or local agency that has agreed to have the EEOC process charges of discrimination that would otherwise fall within its jurisdiction, the charge of discrimination must be submitted within 300 days of the act constituting the unlawful employment practice. *Id.*; *EEOC v. R&R Ventures*, 244 F.3d 334, 338 n* (4th Cir. 2001); *EEOC v. Techalloy Md., Inc.*, 894 F.2d 676, 678 (4th Cir. 1990). In states without such an

arrangement, the charge of discrimination must be filed within 180 days of the discriminatory practice. 42 U.S.C. § 2000e–5(e)(1). Then, once a plaintiff receives a Right-to-Sue Letter from the EEOC signifying the completion of its review, that plaintiff has 90 days from the receipt of the letter to bring a civil action against the employer. 42 U.S.C. § 2000e–5(f)(1). Thus, a plaintiff such as Thomas has an effective limitations period of either a total of 390 days or 270 days, depending on the state, plus the duration of the pendency of the EEOC charge. The limitations period for ADEA claims arising in Maryland is the same as the period for Title VII claims. 29 U.S.C. §§ 626 (d)(1)(A), (e).

Other courts that have considered the reasonableness of a contractual reduction of this Title VII statutory limitations period have found reductions to six months to be unreasonable or against public policy because an EEOC charge may remain pending for a substantial period of time, such that a six-month limitations period would likely expire before the plaintiff has satisfied the requirement to exhaust administrative remedies. *See, e.g.*, *Njang*, 187 F. Supp. 3d at 179-81; *Mazurkiewicz v. Clayton Homes, Inc.*, 971 F. Supp. 2d 682, 688-89 (S.D. Tex. 2013); *Marby v. W. & S. Life Ins. Co.*, No. 03 CV 848, 2005 WL 1167002, at \*4-5 (M.D.N.C. Apr. 19, 2005). *But see Notestine v. Myriad Genetic Laboratories, Inc.*, No. 11-cv-822 DN, 2013 WL 2420341, at \*1-2 (D. Utah May 31, 2013) (in a Title VII case, upholding a six-month contractual limitations period as reasonable based in part on the reasoning that the plaintiff could file suit before receipt of a right-to-sue letter and seek a stay of the case until the letter is received). The Court agrees that such a contractually shortened limitations period would be unreasonable because it would effectively deprive the plaintiff of the right to file a Title VII civil action. However, as discussed above, the Limitations Agreement, even while reducing the limitations period to six months, crucially tolls the limitations period during the entire time period of the EEOC administrative

process. Because of this tolling provision, a plaintiff may complete the EEOC administrative process, as required before filing a civil action, without the limitations period expiring during its pendency. The tolling provision also preserves intact the Title VII-specific interest of providing a mechanism to promote conciliation before litigation. *See Logan*, 939 F.3d at 828-29. Thus, the Limitations Agreement's specific effect is to reduce the period of time outside the EEOC process in which to prepare and file a civil action from 390 days or 270 days under the statute to 180 days.

Although such a reduction impacts the amount of time available to prepare a civil case and complaint, it is not so drastic as to support a finding of unreasonableness, particularly where the plaintiff would be able to continue preparing a civil case during the tolled period of time when the EEOC charge is pending. Notably, courts have found that a contractual shortening of a limitations period to six months for a § 1981 employment discrimination claim, which is often based on the same facts that would underly a Title VII claim, is reasonable and enforceable in part because a plaintiff is not required to file an EEOC charge and exhaust that administrative remedy before filing suit. *See, e.g., Wilkerson v. Fed. Express*, No. 10-CV-01855-AW, 2011 WL 2176823, at *4 (D. Md. June 2, 2011) (upon consideration of Maryland law, enforcing a contractual provision shortening the limitations period for a § 1981 employment discrimination claim to six months); *Njang*, 187 F. Supp. 3d at 178–79 (finding that the shortening of the limitations period for a § 1981 claim to six months was not unreasonable and was enforceable). *Cf. Garcia v. Fujitec America, Inc.*, 621 F. Supp. 3d 577, 582 (D. Md. 2022) (finding a reduction by contract of the statutory limitations period for a Maryland wage-and-hour claim from three years to one year was reasonable in length in part because it gave the plaintiff "sufficient opportunity to investigate and file an employment-related claim"). The Court therefore finds that because of the tolling provision, the shortened Title VII limitations period is not "unreasonably short" and thus must be

23

enforced. *In Re Cotton Yarn*, 505 F.3d at 287. Where Thomas has not disputed that her federal claims would be barred under the Limitations Agreement, *see supra* part III.B, the Court will grant the Motion for Summary Judgment as to Thomas's Title VII, ADEA, and § 1981 claims.

### D.   State Law Claims

Though Thomas did not make any specific arguments in her brief on why the Limitations Agreement is not enforceable as to her state law claims, her counsel separately argued, during the hearing on the Motion and in an email to the Court, that even if her federal claims are time-barred under the Limitations Agreement, her state law claims under the MFEPA are not time-barred because a Maryland statute precludes the enforcement of the Limitations Agreement against such claims. Under Maryland law, "[p]arties may agree to a provision that modifies the limitations result that would otherwise pertain provided (1) there is no controlling statute to the contrary, (2) it is reasonable, and (3) it is not subject to other defenses such as fraud, duress, or misrepresentation." *Ceccone*, 165 A.3d at 483 (quoting *College of Notre Dame of Md., Inc. v. Morabito Consultants, Inc.*, 752 A.2d 265, 273 (Md. Ct. Spec. App. 2000)).

Thomas makes no argument relating to the third prong and instead focuses on the first prong, on which Thomas argues that there is a controlling statute that bars contractual limitations periods that shorten the limitations period for an MFEPA claim. Specifically, Thomas points to the provision within the MFEPA stating that "a complainant may bring a civil action against the respondent alleging an unlawful employment practice if . . . the complainant initially filed a timely administrative charge or complaint under federal, State, or local law alleging an unlawful employment practice," "at least 180 days have elapsed since the filing of the administrative charge or complaint," and "the civil action is filed within 2 years after the alleged unlawful employment practice occurred," but that this two-year limitations period is tolled while the "administrative

charge or complaint filed by the complainant . . . is pending." Md. Code Ann., State Gov't § 20–1013(a) ("the MFEPA Limitations Provision"). Although the shortening of the limitations period to 180 days arguably conflicts with this provision, in *Ceccone*, the Court of Appeals of Maryland, now known as the Supreme Court of Maryland ("the Maryland Supreme Court"), clarified that the first prong bars a contractual limitations provision only when there is a statute "that explicitly bar[s] any effort to shorten a statute of limitations." *Ceccone*, 165 A.3d at 482, 484. The mere presence of a statutory limitations provision, such as the MFEPA Limitations Provision, does not trigger the first prong. *See id.* Accordingly, where the MFEPA Limitations Provision does not explicitly bar contracts that shorten the limitations period set forth in that statute, the Court rejects Thomas's argument that the Limitations Agreement is unenforceable as to the MFEPA claims based on a statutory bar under Maryland law.

Finally, the Court considers Thomas's general argument that the Limitations Agreement is unreasonable in relation to the MFEPA claims. In *Ceccone*, the Maryland Supreme Court identified the following factors to be considered in assessing the reasonableness of contractual limitations periods: (1) "the subject matter of the contract"; (2) "the duration of the shortened limitations period compared to the period that would otherwise govern"; (3) "the relative bargaining power of the parties to the contract"; and (4) "whether the shortened limitations period is a one-sided provision that applies to one party but not the other." *Id.* at 483.

Thomas has made no arguments relating to the first or fourth factors. As to the second factor, Thomas has made no arguments other than those already addressed in relation to the federal claims, which the Court has found insufficient to establish that the duration of the shortened limitations period is unreasonable. *See supra* part III.C.2; *Haas v. Lockheed Martin Corp.*, 914 A.2d 737, 742 & n.8 (Md. 2007) (stating that Title VII is "the federal analog" to the MFEPA and

25

that Maryland courts thus "traditionally seek guidance from federal cases in interpreting" the MFEPA).

As to the third factor, at the hearing, Thomas's counsel generally asserted that the Limitations Agreement was a contract of adhesion in that Thomas had no opportunity to negotiate its terms.    Indeed, the Limitations Agreement was part of an Employee Handbook Acknowledgement of Receipt apparently signed by all employees, suggesting that there was an imbalance in bargaining power.  Nevertheless, Thomas has identified no authority establishing that a contractual limitations period contained in such a document and under similar circumstances is unenforceable under Maryland law.  Rather, Maryland courts have enforced contractual provisions contained in such form contracts signed by parties without apparent bargaining power.  *See Hollman v. Circuit City Stores, Inc.*, 894 A.2d 547, 548-549, 557 (Md. 2006) (enforcing an arbitration agreement in employment application that the employee was required to sign in order for the company to consider her employment application); *Walther v. Sovereign Bank*, 872 A.2d 735, 744-46, 757 (Md. 2005) (finding that an arbitration clause and its jury waiver provision were enforceable and not procedurally and substantively unconscionable even though it was contained in a mortgage loan agreement and plaintiffs claimed that they "had no meaningful choice" on whether to agree to it and had "no opportunity for negotiation").  Notably, Thomas has offered no specific facts relating to the circumstances of the signing of this specific Limitations Agreement and has explicitly declined to seek discovery on this issue.  Where Maryland law provides that "[a] contract of adhesion is not automatically deemed *per se* unconscionable," *Walther*, 872 A.2d at 746, the Court cannot find that this factor provides a basis to conclude that the Limitations Agreement is unenforceable under Maryland law based on unreasonableness.

Accordingly, where Thomas has not established that the Limitations Agreement is unenforceable under Maryland law, the Court concludes that it may be applied to the MFEPA claims. Because Thomas's MFEPA claims are time-barred under the Limitations Agreement, *see supra* part III.B, the Court will grant the Motion for Summary Judgment as to those claims.

### CONCLUSION

For the foregoing reasons, the Motion will be GRANTED IN PART and DENIED IN PART in that the Motion to Transfer Venue will be denied, but the Motion to Dismiss, construed by agreement as a Motion for Summary Judgment, will be granted. A separate Order shall issue.

Date:  December 27, 2024



THEODORE D. CHUANG
United States District Judge